# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

655 Third Avenue  
Suite 1821  
New York, NY 10017  
Tel. No. 212.679.5000  
Fax No. 212.679.5005

1010 Northern Boulevard  
Suite 328

MEMO ENDORSED

> Having reviewed the parties' settlement in accordance with *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), the Court concludes that it is fair and reasonable.
>   Accordingly, the settlement is hereby APPROVED and this action is hereby DISMISSED with prejudice.
>   The Clerk of Court is directed to close this case.
>   So ordered.  Dated: July 14, 2016

*Via ECF*  
The Honorable J. Paul Oetken  
United States District Court for the  
Southern District of New York  
40 Foley Square  
New York, New York 10007

_____  
J. PAUL OETKEN  
United States District Judge

Re:    *Diawara v. XPO Logistics Worldwide, Inc., et al.,* Case No. 16-cv-3443 (JPO)

Dear Judge Oetken:

We represent Plaintiff, Sidy Diawara, in the above-referenced matter where he brings claims against Defendants XPO Courier, LLC,[1] (formerly known as UX Specialized Logistics, LLC, which acquired its business from EarlyBird Delivery Systems, LLC), Contractor Management Services, LLC,[2] and Ralph Whitty[3] (all, collectively, as "Defendants"), for, *inter alia*, Defendants' alleged violations of the overtime provisions of the Fair Labor Standards Act ("FLSA").[4]  Plaintiff filed his complaint in this matter on May 9, 2016.  Following service of process, the Parties, through counsel, engaged in settlement negotiations to resolve Plaintiff's individual claims.  Following several weeks of negotiations, the Parties reached an agreement in principle to resolve this matter.  We write now to explain the terms of the Parties' settlement of Plaintiff's FLSA claims (hereinafter, "Agreement"), and to seek final approval of that Agreement in accordance with *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).  The Parties' Agreement is attached as **Exhibit A.**

---

[1] XPO Courier, LLC was named in the caption as XPO Logistics Worldwide, Inc.

[2] Contractor Management Services, LLC is not a party to the Settlement Agreement, but is named therein as a third-party beneficiary of the agreement.

[3] Mr. Whitty was named in the caption as Ralph Wheaty.

[4] Plaintiff notes that the resolution of his non-FLSA claims does not require judicial approval.

1

**I.      Terms of FLSA Settlement**

The total amount of the settlement is $60,000.00 (hereinafter the "Settlement Sum"), with $39,511.32 of that being paid to Plaintiff, and the remaining $20,488.68 to Plaintiff's counsel. Of that amount, $20,000.00, or one-third of the Settlement Sum, represents attorney's fees, and the remaining $488.68 represents reimbursement for Plaintiff's counsel's out-of-pocket expenses.

The Parties respectfully submit that this amount and allocation is fair and reasonable under the circumstances for the reasons detailed below.

**II.     Facts Supporting the Proposed Settlement Terms**

The Parties hold significantly different viewpoints on the underlying facts and law governing this matter and Defendants' potential liability. Plaintiff alleges that he worked for Defendants as a delivery driver from April 12, 2004 through January 6, 2014, except for a two-month period during the latter portion of 2013 (when Plaintiff took a leave of absence due to an injury). For his work, Plaintiff alleges that he was paid varying amounts based on the number of hours worked, and the number of stops completed in a given workweek. Plaintiff alleges that he was misclassified as an independent contractor and was required to work as many as eighty to 100 hours per week without receiving overtime compensation for hours worked over forty each week.

Defendants, in sharp contrast, vehemently dispute Plaintiff's claims, and instead argue that Plaintiff was indeed an independent contractor, and thus not entitled to any overtime compensation. Defendant argues that Plaintiff: owned his own truck, which he used to perform jobs for the Defendants; was free to set his own schedule; and chose how many deliveries he performed in a given week, thereby controlling his ability to earn more (or less) money at all times.

The Parties also dispute the method of calculating Plaintiff's damages, if any. In Plaintiff's view, his weekly wages were akin to a salary, solely intended to compensate him for his first forty hours of work, meaning that his overtime pay would be calculated by dividing his weekly wages by forty, and multiplying that rate by one and one-half. This would yield an estimated regular rate of $19.83, with an overtime rate of $29.75. Defendants dispute this calculation, and contend that even if Plaintiff were misclassified, the weekly wages that Defendants paid him covered all of his hours worked per week, and that any overtime compensation owed would be based on a half-rate theory of recovery - - not time-and-one half Plaintiff's regular rate of pay. This methodology would yield a regular rate of $9.92, with an overtime rate of $4.96 for any hours over forty. Finally, Defendants dispute that Plaintiff is entitled to recover liquidated damages and maintain that they acted in good faith at all times.

2

### III.     Reasonableness of Proposed Settlement Terms[5]

Regarding the range of possible recovery, if Plaintiff proved that Defendants violated the FLSA, but that those violations were not willful, the relevant time period for Plaintiff's claims would be from May 9, 2014 to the present. However, Plaintiff stopped working for Defendants on January 6, 2014, meaning that Plaintiff's recovery under this scenario would be zero. Assuming that Plaintiff could prove that Defendants willfully violated the FLSA, Plaintiff could recover damages from May 9, 2013 through January 6, 2014, subtracting the two-month period where he missed work due to an injury. Based solely on the allegations in the Complaint, Plaintiff's unpaid overtime compensation for this period - - according to Plaintiff's overtime calculation of one and one-half his regular rate as described above - - amounts to an estimated $31,620.00. This amount, discounted to its present-day value based on a three-year delay (accounting for anticipated discovery, motion practice, and trial in the class and collective action, and adjusting 3% for inflation) amounts to $28,936.78. Critically, if Plaintiff prevailed, but Defendants method of calculating overtime was credited, Plaintiff's recovery would be an estimated $6,276.93. Plaintiff's recovery here of $39,511.35 - - after Plaintiff's counsel's fees and expenses - - amounts to 173% of the present-day value for his full compensatory damages under Plaintiff's theory of damages, were he to prevail on all of his FLSA claims at trial. In light of the significant litigation risks outlined above, and the possibility that - - after what will undoubtedly be years of litigation - - Plaintiff may ultimately obtain nothing, the Parties submit that this settlement is fair and reasonable.[6]

Further absent from this settlement are any factors that would militate against the Court approving the Agreement. Even though Plaintiff also brings additional non-wage claims in this matter, Plaintiff's release in the Settlement Agreement is narrowly tailored, and serves to release only the claims actually filed in his case and any other employment related claims.[7] It therefore

---

[5] In evaluating a proposed settlement of FLSA claims, courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.*

[6] Moreover, shortly after Plaintiff stopped working with Defendants in January of 2014, Defendants required all persons in positions similar to Plaintiff to execute arbitration agreements featuring class action waivers. Thus, were Plaintiff to proceed with this case, it is unlikely that additional plaintiffs would have joined the action.

[7] While the agreement does contain a release that releases non-FLSA "employment related" claims, Plaintiff also brings claims under the New York City Human Rights Law and New York State Human Rights Law. Thus, in this case, "this release is appropriate in the context of a separate resolution of non-wage-and-hour claims." *See Santos v. Yellowstone Props., Inc.*, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016).

does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Gonzalez v. Lovin' Oven, et al.,* 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (Locke, *J.*) (denying parties' joint motion for FLSA settlement approval due to the settlement agreement containing a general release and confidentiality clause); *see also Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (Torres, *J.*); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. Mar. 30, 2015) (Kaplan, *J.*). Likewise, the Agreement does not contain a confidentiality clause, and therefore does not pose any risk in "[running] afoul [of] the purposes of the FLSA and the public's independent interest in assuring that employee's wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez,* 2015 WL 1455689, at *5).

With respect to the legal fees, $20,000.00 reflects compensation to Plaintiff for his counsel's attorneys' fees in this matter, and accounts for one-third of the total settlement amount. Fee awards representing one-third of the total settlement are routinely held reasonable and "consistent with the trend in this Circuit." *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); *Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 09, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *see Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery).

Moreover, should the Court desire to conduct a lodestar "cross check," Plaintiff's counsel's fees are reasonable in light of the time spent at this admittedly early stage in this case. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar crosscheck, Plaintiff's counsel multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). While the Parties reached this settlement at an early stage in the litigation, Plaintiff's counsel has expended over fifty-two hours of attorney and paralegal time and nearly $11,000.00 in lodestar fees in litigating and settling this matter. This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the partner supervising the case; $250.00 per hour for Michael R. Minkoff, Esq., the lead associate on the matter; and between $75.00 and $125.00 per hour for paralegals and law clerks. Courts routinely approve these rates. *See Santos*, 2016 WL 2757427, at *4 (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the Firm's associates, and between $75 per hour and $90 per hour for the Firm's paralegals); *Calderon v.*

4

*Dynamic Corp. Holdings, Inc.*, No 14-cv-3093 (ARL) (E.D.N.Y. Apr. 8, 2016) (same); *Rosario v. Valentine Ave. Discount Store. Co.*, No. 10-cv-5255 (ERK)(LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, No. 15-cv-527 (LGS)(JCF) (S.D.N.Y. Dec. 21, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the Firm's senior associates, and $100.00 per hour for the Firm's paralegals); *Cregg v. FirstService Residential New York, Inc.*, No. 15-cv-3876 (LB) (E.D.N.Y. Dec. 9, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for Firm's associates, and $75 per hour for the Firm's paralegals); *Patino v. Brady Parking, Inc.*, 2015 WL 2069743, at *2 (S.D.N.Y. Apr. 30, 2015) (Freeman, *J.*) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for one of the Firm's associates, and $75 per hour for the Firm's paralegals). Plaintiff's Counsel will provide contemporaneously-kept billing records evidencing this lodestar should the Court require it. Thus, Plaintiff's counsel's requested fees of $20,000.00 represents a lodestar multiplier of less than two, which is well within the range of reasonableness. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (approving lodestar multiplier of 6.3, and collecting cases approving multipliers of "up to eight times the lodestar, and in some cases, even higher multipliers"). Finally, Plaintiff's counsel's requested reimbursement for expenses of $488.68 is limited to the complaint filing fee, postage, and service of process fees. Plaintiff's counsel will provide an itemized expense report with receipts should the Court require it.

**IV.**     **Conclusion**

For the forgoing reasons, Plaintiff, on behalf of the Parties, respectfully requests that the Court approve the settlement of Plaintiff's FLSA claims on the terms set forth in the Agreement and described herein, and enter an order dismissing this matter with prejudice.

Respectfully submitted,

Michael R. Minkoff, Esq.
*For the Firm*

C:    All Counsel of Record (*Via ECF)*

## SETTLEMENT AGREEMENT

AGREEMENT made this 28th day of June, 2016, by and between Sidy Diawara ("Plaintiff") and XPO Courier, LLC ("XPO"), Ralph Whitty ("Whitty"), and EarlyBird Delivery Systems, LLC d/b/a UX Specialized Logistics ("UX" and together with XPO and Whitty, "Defendants").

### WITNESSETH

WHEREAS, Plaintiff has filed a Complaint in an action in the United States District Court, Southern District of New York (the "Court"), captioned Sidy Diawara, on behalf of himself, individually, and on behalf of all others similarly-situated, Plaintiff, against XPO Logistics Worldwide, Inc., f/k/a UX Specialized Logistics, LLC (improperly named party), and Contractor Management Services, L.L.C. ("CMS"), and Ralph Whitty, individually, Defendants, Docket No.: 16-cv-3443 (the "Action"); and

WHEREAS, the Plaintiff and Defendants (individually, a "Party" and collectively, the "Parties") are desirous of compromising and settling their disputes and to avoid further expense and to terminate all controversy and disputes having arisen between the Parties from their business dealings and transactions; and

WHEREAS, the Parties understand and agree that Defendants deny each and every allegation of wrongdoing asserted in the above-captioned Action, including but not limited to, all such allegations contained in Plaintiff's Complaint and in any other papers prepared, filed, served, mailed, or telefaxed, electronically or otherwise, by Plaintiff or on his behalf in the Action; and

WHEREAS, a bona fide dispute exists as to Plaintiff's claim for, *inter alia*, alleged unpaid overtime wages; and

WHEREAS, the Court has made no findings as to the merits of this action;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, the Parties hereto agree as follows:

1. In full settlement of all claims made by Plaintiff against Defendants in the Action, UX shall pay to Plaintiff the sum of SIXTY THOUSAND DOLLARS AND ZERO CENTS ($60,000.00) (the "Settlement Amount") within three (3) business days after Court Approval of this Agreement ("Effective Date"). Defendants shall deliver the Settlement Amount to Michael J. Borrelli, Esq., Borrelli & Associates, P.L.L.C., 1010 Northern Boulevard, Suite 328, Great Neck, New York 11021 in the following manner:

> a. Twenty Thousand Dollars and Zero Cents ($20,000.00) by check made payable to Borrelli & Associates, P.L.L.C. as payment for their attorneys' fees;
>
> b. Four Hundred Eighty-Eight Dollars and Sixty-Seven Cents ($488.67) by check made payable to Borrelli & Associates, P.L.L.C. as payment for their incurred litigation expenses; and
>
> c. Nineteen Thousand Seven Hundred Fifty-Five Dollars and Sixty-Six Cents ($19,755.66) by check made payable to Plaintiff, which will be treated as wages and subject to withholdings and deductions, to be accounted for on an IRS Form W-2;
>
> d. Nineteen Thousand Seven Hundred Fifty-Five Dollars and Sixty-Seven Cents ($19,755.67) by check made payable to Plaintiff as prejudgment interest and statutory non-wage payments on which there will be no tax

withholding and for which an IRS Form 1099 (marked "Other Income") shall be issued reporting non-wage income as required by law.

2.  Should the Defendants fail to timely make payment pursuant to the provisions in Paragraph 1, above, Plaintiff shall be entitled to an additional amount of 100% of the Settlement Amount as liquidated damages.

3.  As indicated above, for income and payroll tax purposes, fifty percent (50%) of Plaintiff's share of the Settlement Amount will be treated as wages and subject to required tax withholding and deductions Plaintiff shall report such to taxing authorities as wage income as required by law on an IRS Form W-2. The remaining fifty percent (50%) of Plaintiff's share of the Settlement Amount will be treated as prejudgment interest and statutory non-wage payments on which there will be no tax withholding and for which an IRS Form 1099 (marked "Other Income") shall be issued reporting non-wage income as required by law. Defendant and Defendant's Counsel make no warranty and have provided no advice regarding the tax treatment of payments and Plaintiff acknowledges he has received no representations from Defendant's Counsel regarding taxation or tax advice. All taxes, other than the employer's share of payroll taxes, are the sole responsibility of the individual receiving the payment.

4.  Plaintiff shall withdraw, in writing and with prejudice, all complaints, suits, actions, charges, claims and/or legal proceedings he has instituted against Defendants and any Releasee (identified herein), including but not limited to Plaintiff's claims in the above-captioned Action. Plaintiff authorizes his counsel to execute the Stipulation and Order of Dismissal with Prejudice attached hereto as **Exhibit A**. Plaintiff affirms that he has not instituted any complaint, suit, action, charge or other legal proceeding against Defendants or any Releasee identified in this Agreement that currently is pending other than the Action and is not aware of any such claim that

Page 3 of 13

could be asserted against Defendants arising out of the identical factual predicates as the claims made as the basis of the Action. Further, Plaintiff shall not obtain or accept any recovery or relief from any other complaint, suit, action, charge, claim or other legal proceeding arising out of the identical factual predicate as the claims made the basis of the Action.

    5. Plaintiff understands and agrees that the Settlement Amount (described in Paragraph 1 above) is in full satisfaction of and exceeds any obligations Defendants and the Releasees may have with respect to Plaintiff's (i) claims for alleged unpaid wages, liquidated damages, interest and attorneys' fees under the wage and hour provisions of the New York State Labor Law, the Fair Labor Standards Act, and any other applicable wage hour and wage payment laws, rules or regulations for anything that has occurred up to the date Plaintiff executes this Settlement Agreement and (ii) claims for religious discrimination in violation of the New York City and New York State Human Rights Laws. Plaintiff further affirms that: (1) he has no known workplace injuries or occupational diseases, (2) he has not been retaliated against for reporting any allegations of wrongdoing or fraud against Defendants, any of Defendants officers or any other Releasee and (3) he is not currently aware of any possible claims that could be asserted by him against Defendants or the Releasees arising out of the identical factual predicates as the claims made the basis of the Action. Plaintiff also affirms that he has not alleged that any of Defendants' or Releasees' decisions regarding his pay and benefits during his employment through the date of his separation of employment were discriminatory based on age, disability, race, color, sex, national origin or any other classification protected by law other than religion (collectively as "Employment Related Claims").

    6. In consideration of the payment of the Settlement Amount consistent with the terms of paragraph 1 hereof and other good and valuable consideration, receipt of which is

Page 4 of 13

hereby acknowledged. Plaintiff hereby releases and discharges Defendants, their owners, subsidiaries, principals, directors, officers, agents, attorneys, assureds, employees, past and present, heirs, executors, administrators, successors, and assigns, as applicable as well as releases and discharges the additional co-defendant in this Action, CMS, along with all of CMS's owners, subsidiaries, principals, directors, officers, agents, attorneys, assureds, employees, past and present, heirs, executors, administrators, successors, and assigns, as applicable (collectively, "Releasees") from all statutory, contract, tort and all other claims against Releasees and releases and forever discharges Releasees to the fullest extent permitted by law from all claims set forth in the Action, including all Employment Related Claims and all claims arising under or pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. the New York Labor Law, the New York City Human Rights Law, and the New York State Human Rights Law and their governing regulations.

7.  In consideration for the settlement of the Action, and other good and valuable consideration, receipt of which is hereby acknowledged, each Defendant hereby releases and discharges Plaintiff, and his partners, associates, agents, attorneys, assureds, employees, past and present, heirs, executors, administrators, successors, and assigns (collectively, the "Plaintiff Releasees") from any and all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, at law or in admiralty or equity, which against the Plaintiff Releasees, such Defendant, its owners, subsidiaries, principals, directors, officers, partners, agents, attorneys, assureds, employees, past and present, heirs, executors, administrators, successors, and assigns ever had, now have, or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever

from the beginning of the world to the date of this Settlement Agreement for conduct set forth in the Action.

8. Plaintiff agrees that he will not knowingly, in the future, seek or accept employment or enter into a contractual relationship to provide services for the Defendants, their owners, subsidiaries, successors, and assigns. If, through mistake or inadvertence or otherwise, Plaintiff comes to learn that he has applied for employment with any of the aforementioned entities, then he/she shall withdraw his/her application immediately upon notice without any recourse, legal or otherwise, and to the extent that Plaintiff has already been hired, he/she will resign immediately upon notice without any recourse, legal or otherwise. Additionally, if through mistake or inadvertence or otherwise, Plaintiff enters into a contractual relationship to provide services for the Defendants, these contracts shall be immediately terminated and declared null and void without any recourse, legal or otherwise.

9. The Parties hereby covenant, warrant and represent, with full knowledge that each other intends to rely thereupon, that they possess all of the requisite power and authority to enter into and fully perform their obligations under this Settlement Agreement.

10. The Parties each represent and warrant that they have not assigned, do not intend to assign, and will not assign any claims that are the subject of the releases set forth in paragraphs 4 and 5 herein.

11. Nothing in the Settlement Agreement shall be construed as an admission of liability or wrongdoing by any Party or Releasee, including CMS, with respect to any of the facts or claims asserted in the Action.

12. The Action shall be dismissed against Defendants and CMS, in its entirety and with prejudice to Plaintiff, upon the Parties' counsels' execution of the Stipulation and Order

of Dismissal with Prejudice and the court having "So Ordered" the same. Upon receipt of the fully-executed Settlement Agreement, the Stipulation and Order of Dismissal with Prejudice in the form attached hereto as **Exhibit A**, Plaintiff or his agents shall file the Settlement Agreement on the Court's docket with a cover letter jointly requesting that the Court approve the Stipulation and Order of dismissal with Prejudice.

13. This Settlement Agreement shall be governed and interpreted under the laws of the State of New York applicable to contracts made and performed fully within the State and shall be binding upon the Parties hereto, their successors, heirs, executors, administrators, assigns, corporate parents, affiliates and subsidiaries.

14. This Settlement Agreement constitutes the entire agreement between the Parties and there are no promises or representations, express or implied, except as otherwise stated herein. The Parties further agree that no oral waiver of this provision will be allowed or claimed under any circumstances.

15. The Parties shall bear their own attorneys' fees, costs and disbursements except as described above, and there shall be no application to any court by any Party or by any attorney representing any Party for attorneys' fees, costs and/or disbursements.

16. All representations, warranties, rights and obligations contained herein shall survive the execution of this Settlement Agreement.

17. No modifications or amendments of this Settlement Agreement shall be effective unless made in writing and signed by the Party against whom enforcement thereof is sought.

18. The Parties acknowledge that they have all participated in the drafting of this Settlement Agreement, and the language of all parts of this Settlement Agreement shall in all

Page 7 of 13

cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

19. The Parties agree that the Court will retain jurisdiction to enforce this agreement. In the event that the Court finds a material breach of this agreement, the prevailing party shall be entitled to recover their reasonable attorneys' fees, costs, and expenses. CMS is a third-party beneficiary of this Settlement Agreement and shall have the right to enforce this Agreement and its terms as if a Party hereunder.

20. This Settlement Agreement may be executed in counterpart originals as if fully and simultaneously executed in a single document.

21. The Parties affirmatively represent that:

(i) they have had the opportunity to consult with counsel of their own choosing in connection with this matter; and

(ii) they are under no financial, emotional, physical or other duress or compulsion in connection with their entry into this Settlement Agreement; and

(iii) they are under no time pressure in connection with their entry into this Settlement Agreement;

(iv) the terms of this Settlement Agreement are fair, reasonable, and not unconscionable; and

(v) they have read and fully understand the terms and conditions of this Settlement Agreement.

**PLAINTIFF HEREBY CONFIRMS THAT HE HAS BEEN AFFORDED TWENTY-ONE (21) DAYS TO CONSIDER THIS SETTLEMENT AGREEEMENT AND HE HAS**

CONSULTED WITH COUNSEL OF HIS CHOOSING REGARDING THIS SETTLEMENT AGREEMENT.

PLAINTIFF AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAYS CONSIDERATION PERIOD.

HAVING ELECTED TO EXECUTE THIS SETTLEMENT AGREEMENT TO FULFILL THE PROMISES SET FORTH HEREIN THAT PERTAIN TO HIM, AND TO RECEIVE THEREBY THE CONSIDERATION SET FORTH IN PARAGRAPH 1 ABOVE, PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH COUNSEL, VOLUNTARILY ENTERS INTO THIS NEGOTIATED SETTLEMENT AGREEMENT.

IN WITNESS WHEREOF, the Parties hereto have hereunto set their respective hands and seals.

*PLAINTIFF:*

_____
Sidy Diawara

JOHNEAL DAWKINS
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 50020927
MY COMMISSION EXPIRES _____

STATE OF        COUNTY OF        ss:

On June, 30 2016 before me personally came SIDY DIAWARA to me known and who executed the foregoing Settlement Agreement, and duly acknowledged to me that he executed the same as his act for the purposes expressed therein.

_____

JOHNEAL DAWKINS
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 50020927
MY COMMISSION EXPIRES 2020

Page **9** of **13**

***DEFENDANTS:***

XPO COURIER, LLC

By: *[signature]*
GE Devens
Title: Secretary

STATE OF        COUNTY OF        ss:

On **16th July** 2016 before me personally came **Gordon Devens** to me known and known to me to be an officer of XPO COURIER, LLC, a **delaware** LLC corporation, and who executed, the foregoing Settlement Agreement, and duly acknowledged to me that she/he executed the same as her/his act for the purposes expressed therein, and that she/he is duly authorized to execute the same in accordance with the powers and authorities conferred upon her/him by said entity.

*Lindsey K. Moaveni*

**LINDSEY K. MOAVENI**
***NOTARY PUBLIC***
**MY COMMISSION EXPIRES MAY 31, 2021**

RALPH WHITTY

*[signature]*
Ralph Whitty

STATE OF        COUNTY OF        ss:

On **1st July** 2016 before me personally came RALPH WHITTY to me known and who executed the foregoing Settlement Agreement, and duly acknowledged to me that he executed the same as his act for the purposes expressed therein.

PATRICK D NICHOLSON
Notary Public
State of New Jersey
My Commission Expires Dec 19, 2017

EARLYBIRD DELIVERY SYSTEMS, INC.
d/b/a UX SPECIALIZED LOGISTICS

By: STEVEN MOELK
Title: CEO

STATE OF NJ COUNTY OF Bergen ss:

On 1st July 2016 before me personally came Steven Moelk to me known and known to me to be an officer of EARLYBIRD DELIVERY SYSTEMS, INC. d/b/a UX SPECIALIZED LOGISTICS. a New York limited liability company, and who executed, the foregoing Settlement Agreement, and duly acknowledged to me that she/he executed the same as her/his act for the purposes expressed therein, and that she/he is duly authorized to execute the same in accordance with the powers and authorities conferred upon her/him by said entity.

PATRICK D NICHOLSON
Notary Public
State of New Jersey
My Commission Expires Dec 19, 2017

Page **11** of **13**

**Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SIDY DIAWARA, on behalf of himself, individually, and on behalf of all others similarly-situated,

        Plaintiff,

-against-

XPO LOGISTICS WORLDWIDE, INC., f/k/a UX SPECIALIZED LOGISTICS, LLC and CONTRACTOR MANAGEMENT SERVICES, L.L.C., and RALPH WHITTY, individually

        Defendants.

Docket No.: 16-cv-3443

---

**STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE**

IT IS HEREBY STIPULATED AND AGREED, by and between Sidy Diawara, individually and on behalf of all others similarly situated ("Plaintiff") and Defendants XPO Logistics Worldwide, Inc., f/k/a UX Specialized Logistics, LLC, and Ralph Whitty ("Defendants"), through their undersigned attorneys who state that they have been authorized to enter into this Stipulation, that the Parties have agreed to amicably resolve any and all claims by Plaintiff against Defendants and Co-Defendant Contractor Management Services, LLC ("CMS") in this action, including claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq, the New York Labor Law, the New York City Human Rights Law, the New York State Human Rights Law and their governing regulations. The Parties have authorized their undersigned counsel to stipulate, consent and agree to dismiss the instant action with prejudice to Plaintiff. No attorneys' fees or costs will be awarded to any party by the Court, except as described in the Parties'

Page **12** of **13**

settlement agreement, submitted contemporaneously herewith. The terms of the Parties' Settlement Agreement have been reviewed and approved by the Court. The Court shall retain jurisdiction solely to enforce the terms and conditions of the Parties' Settlement Agreement.

Dated: _____

By:_____
   Michael R. Minkoff
   Borrelli & Associates, P.L.L.C.
   655 Third Avenue, Suite 1921
   New York, New York 10017
   *Attorneys for Plaintiff*

Dated: _____

By:_____

*Attorneys for Defendants*

The Court hereby approves the settlement and dismissal of the instant action with prejudice

SO ORDERED this _____ day of _____, 2016

_____
Hon. J. Paul Oetken